1  Emiliano Malizia (SBN 298545)
   E-mail:     emiliano.malizia@tlrtlaw.com
2  [*admission to Northern District forthcoming*]
   S. Martin Keleti (SBN 144208)
3  E-mail:     smartin.keleti@tlrtlaw.com
   TOSOLINI, LAMURA, RASILE & TONIUTTI, LLP
4  9465 Wilshire Boulevard, Suite 300
   Beverly Hills, California 90212
5  Telephone:     (323) 989-7014
   Fax:           (646) 536-8719
6
7  *Attorneys for plaintiffs Solutions 30 Eastern Europe, s.r.l.,*
   *Swordfish Advisory Services, s.r.l., and*
   *Federico Salmoiraghi*
8

9                    **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11  SOLUTIONS 30 EASTERN EUROPE, S.R.L., a Romanian limited liability company; | Case No.: 3:21-cv-02423 |
| 12  SWORDFISH ADVISORY SERVICES S.R.L., a Romanian limited liability company; and | **COMPLAINT FOR** |
| 13  FEDERICO SALMOIRAGHI, an individual, | **1.    DEFAMATION; AND** **2.    UNFAIR COMPETITION** |
| 14                    Plaintiffs, | |
| 15         vs. | **JURY TRIAL DEMANDED** |
| 16  MUDDY WATERS CAPITAL LLC, a Delaware limited liability company, and | |
| 17  CARSON C. BLOCK, an individual, | |
| 18                    Defendants. | |

19

20         Plaintiffs Solutions 30 Eastern Europe, s.r.l., Swordfish Advisory Services s.r.l., and

21  Federico Salmoiraghi (collectively, "Plaintiffs") allege:

22                              **JURISDICTION**

23         1.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is

24  complete diversity between plaintiff and defendants, and the amount in controversy exceeds

25  $75,000, exclusive of costs and attorney fees.

26                                 **VENUE**

27         2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), because all

28  defendants reside in the same state, and at least one of the defendants resides in this district. Venue

---

is also proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims asserted occurred in this district.

**PARTIES**

3.      Plaintiff Solutions 30 EE is a limited liability company organized and existing under the laws of Romania.

4.      Plaintiff Swordfish Advisory Services s.r.l. ("Swordfish") is a limited liability company organized and existing under the laws of Romania. Swordfish owns (is a member of) Solutions EE.

5.      Plaintiff Federico Salmoiraghi ("Salmoiraghi") is an individual, a citizen of Italy. Salmoiraghi is the beneficial owner of Salmo Services Group ("Salmo") that owns Swordfish and respectively SOLUTIONS 30 EE.

6.      Defendant Mudddy Waters Capital LLC ("Muddy Waters") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in the State of California.

7.      Defendant Carson C. Block ("Block") is the founder, research director, and sole member and member-manager of Muddy Waters. Block resides in California. Plaintiff will refer to Muddy Waters and Block collectively as "Defendants."

8.      Each of the Defendants was the agent, employee, alter ego, or co-conspirator of each of the other Defendants, and was at all times acting within the purpose and scope of said agency, employment, and conspiracy, and each of the Defendants has ratified and approved the acts of the remaining Defendants.

**ALLEGATIONS COMMON TO ALL COUNTS**

9.      Solutions 30 EE is an international company committed to provide help desk services to private companies worldwide. Under the supervision of Salmoiraghi, Solutions 30 EE has been operating successfully. Solutions 30 SE, a company publicly-traded on the Euronext Paris exchange, outsources some of its back-office activities, in Italy and in Eastern Europe, to Solutions EE.

10.     On November 16, 2020, Gianbeppi Fortis, Chairman of Solutions SE, forwarded to Salmoiraghi an anonymous report (the "Report") which Mr. Fortis had received. The Report concerned Solutions 30 SE. Although the Report is anonymous, Plaintiffs are informed and believe that Defendants wrote and sent the Report to Solutions SE.

11.     Among other things, the Report falsely and baselessly accused Solutions SE and its related companies (a) were connected to and facilitating activities of money laundering; and (b) employing former and current criminals as representatives. The first paragraph of the Report reads:

> This report contains detailed analysis of the public accounts and filings of Solutions 30, a service company quoted on the French stock market. The findings presented in this document show that (1) Solutions 30 has multiple links to persons with criminal convictions related to money laundering, (2) Solutions 30 has been party to numerous transactions consistent with money laundering, (3) Solution [sic] 30 and related subsidiary accounts contain numerous mistakes and are impossible to reconcile, (4) Solutions 30's profitability and cash flow do not match the purported nature of the business. [footnotes omitted]

12.     On or about December 8, 2020, Bloomberg published the Report. On social media (Twitter), Defendants denied being the source of the Report, yet republished the substance of the Report and endorsed it for Defendants' readership of more than 180,000 followers. The extreme and irresponsible language from the Report, and the commentary about it, echoed through the blogosphere, just as Defendants planned.

13.     As early as on or about December 11, 2020, Defendants admitted having been short on Solutions 30 SE since approximately May, 2019. The short-sale scheme that emerged publicly on or about the beginning of December, 2020, thus apparently began at least seven months earlier when, by Defendants' own admission, it was short on the stocks, from which it sought to profit by engaging in an aggressive and baseless defamation campaign. Essentially, Defendants engage in a form of extortion or "shakedown" by way of publishing false information to manipulate and confuse the market. Given that Defendants were short on Plaintiff's stock, it was no secret that Defendants would share profits if shares of Solution 30 SE's stock sank. Defendants intentionally organized the negative publicity campaign in an effort to profit from losses by Solutions SE,

1  because Defendants would directly profit from any negative information.

2          14.    On or about January 25, 2021, Defendants sent a letter to Mr. Fortis, not only

3  questioning Solutions 30 SE, but defaming Salmoiraghi personally, and by implication companies

4  affiliated with him. The January 25, 2021 letter stated in pertinent part:

5                  We remain short S30, and in our view, the Anonymous Report's
                  allegations of fraud and money laundering are likely at least
6                  directionally correct. . . . .
                  . . . .
7                  . . . (Mr. Salmoiraghi has a long history of dealings with S30, such as,
                  BSS was once owned, in part, by RZA Connect S.R.L., which is
8                  current owned by Mr. Salmoiraghi through various intermediate
                  entities)

9

10         15.    On or about January 27, 2021, Defendants published an open letter, also impugning

11  Salmoiraghi's character. The January 27, 2021 letter stated, in pertinent part, on page 2:

12                 According to Romanian court records that we just came across, in
                  August 2020, Federico Salmoiraghi, Remote 30 Eastern Europe, and
13                 three affiliated companies (the "Plaintiffs") had their bank accounts
                  closed by Bank Transylvania, which is the third-largest bank in
14                 Romania (the "Bank"). The reason for the closures appears to be
                  suspicion of money laundering. The Bank has a legal obligation to
15                 prevent money laundering. After noting transactions that were
                  suspicious, including amounts paid to Porsche Inter Audio Romania
16                 Srl, (who doesn't love a Porsche?), it requested the Plaintiffs provide
                  satisfactory documentation explaining the transactions within five
17                 days. The Plaintiffs failed to satisfy the Bank's concerns, and the
                  Bank closed the accounts. The Plaintiffs sued the Bank in October
18                 2020, but the Romanian court dismissed the lawsuit and found in
                  favor of the Bank.

19

20  Swordfish was one of the companies, which are listed later in the letter:

21                 The four corporate Plaintiffs were: RZA Connect, Remote 30 Eastern
                  Europe, Swordfish Advisory Services, and Winning Clean Services Srl.
22                 RZA Connect, Remote 30 Eastern Europe, and Swordfish Advisory
                  Services are connected to both S30 and Mr. Salmoiraghi, who himself
23                 is a named Plaintiff.

24  Page 3 of the letter is studded with references to Salmoiraghi, Solutions 30 EE, and

25  Swordfish.

26         16.    An examination of the documents to which the letter alludes confirms that not only

27  did Bank Transylvania (in Romanian, "Banca Transilvania") not have any suspicion of money

28  laundering on the part of Plaintiffs (including Salmoiraghi), but that the bank merely was enforcing

COMPLAINT
4

1    newly-enacted reformed regulations, which require every owner of an account in Romania to be to

2    furnish certain information. In addition, Salmoiraghi prevailed in a lawsuit (the decision can be

3    found at: http://portal.just.ro/301/SitePages/Dosar.aspx?id_dosar=30100000000651667&

4    id_inst=301) that he brought on behalf of another of his companies, RZA Connect s.r.l., further

5    confirmed by the immediate reopening of the accounts involved.

6        17.    The Report and the January 27, 2021 letter are merely examples of the modus

7    operandi Defendants employ. Under the guise of being a protector of ethics in the industries

8    Defendants try to manipulate, Defendants feign concern about potential misconduct, but only by the

9    companies whose shares Defendants are shorting. Defendants begin by creating confusion and fear

10   in investors by way of unverified and often defamatory reports, which they then publish on its their

11   social media platforms and thereby unlawfully create the basis for a successful shorting strategy. In

12   fact, by mid-December, Defendants' efforts started paying dividends considering that Solutions 30

13   SE had already lost half of its market capitalization, and causing Solutions 30 SE and its

14   subsidiaries tremendous and unjustified loss.

15       18.    Defendants have engaged in almost identical and unethical activities in the past, and

16   unless made accountable for their behavior, Defendants will only continue such activities. For

17   example, Defendants have engaged in almost identical and unlawful activity with regard to St. Jude

18   Medical, Inc. ("St. Jude"), with only minor deviations. As in the present case, Defendants were

19   short on St. Jude's stock as well. Defendants similarly then tried to instill fear and confusion in the

20   market by way of misleading and unsubstantiated reports, to unlawfully facilitate the shorting

21   strategy. The only difference is that in this case, it appears that Defendants based their claims on an

22   anonymous Report, which Plaintiffs allege was directly or indirectly commissioned by Defendants

23   or one of their subsidiaries, rather than a report made by Defendants themselves admitted in the case

24   involving St. Jude.

25       19.    Defendants' defamatory statements regarding Salmoiraghi defame him and his

26   companies by implying that employed individuals in connection with the Italian "mafia" in order to

27   facilitate a money laundering scheme. Defendants' statements in these areas are outrightly false or

28   create a false implication that Plaintiffs are unethical and, more importantly, that the companies

1   (both Swordfish and Solutions 30 EE, as well as nonparty Solutions 30 SE) are unsafe investments.

2       20.     While Defendants sometimes attempt to remain vague and in engage in insinuation

3   and speculation, in order to limit their exposure to defamation, their tactics are at times more direct,

4   but even when not, they are transparent.

5       21.     Plaintiffs fully expect Defendants to continue their scheme by making further false

6   and misleading statements in hopes of adversely affecting Solutions 30 SE's stock price for

7   Defendants' gain in disregard for the integrity of the market and its actors, as well as the collateral

8   damage on Plaintiffs, who do business with Solutions 30 SE, either directly or indirectly.

9   Defendants' feigned concerns are nothing but a way to divert attention from their scheme to profit

10  unfairly at the expense of Plaintiffs and others.

11                          **COUNT 1**

12                          **DEFAMATION**

13              **[by All Plaintiffs against All Defendants]**

14      22.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 21 as if fully

15  set forth.

16      23.     As set forth above, Defendants have, through their statements about the alleged

17  unlawful activities by Salmoiraghi and his companies, publicly stated or implied that Plaintiffs have

18  criminal associations, and that Plaintiffs have routinely employed former criminals in order to

19  facilitate a money laundering scheme.

20      24.     As set forth in detail above, these implied statements of fact are demonstrably false

21  and misleading. Defendants have made these statements and implications by the selection and

22  juxtaposition of true statements so as to imply a defamatory connection between them, as well as by

23  omitting facts that would have dispelled the defamatory implication and revealed the truth.

24      25.     Defendants made these statements either knowing that they were false, or in reckless

25  disregard of their truth or falsity, in order that each of them could profit from Defendants' admitted

26  short positions in Solutions 30 SE's stock. Defendants intended to make these defamatory

27  implications and to cause the expected and intended repetition of them on a wide scale in order that

28  Defendants would profit from their admitted short positions in Solutions 30 SE's stock, and did so

1  either knowing that they were false, or in reckless disregard of their truth or falsity. Through

2  Defendants' malice toward Solutions 30 SE, Defendants have acted without regard to the rights of

3  others affected by Defendants' defamatory statements or the effect Defendants' actions would have

4  on Plaintiffs.

5       26.    These implied statements of fact have harmed and will harm or threaten to harm

6  Plaintiffs in their business. The allegations of dishonesty and of violating money laundering laws

7  are defamatory per se. Because Defendants' false and misleading statements are defamatory per se,

8  damages are presumed, for Salmoiraghi, an individual, for the damage is to his personal reputation.

9  For Solutions 30 EE and Swordfish, their prestige and standing in the business world has been

10  harmed; they depend on their good name in order to attract customers and to achieve the purposes

11  for which they were created, so any false publications which would tend to drive away customers or

12  taint their name cause damages. Plaintiffs have been (and likely be further) substantially injured as a

13  result of these false statements including, among other things, loss of goodwill. Plaintiffs have lost

14  business, including Solution 30 EE's rescission of a contract, costing it a loss of business in excess

15  of $150,000 per month. The baseless allegations threaten to have the business community, and in

16  particular, financial institutions, shun Plaintiffs, and cause Plaintiffs to lose access to banking

17  services. This harm and risk of future harm is ongoing.

18       27.    This action arises from Defendants' intentional, willful and malicious scheme to

19  manipulate the securities markets for their own financial windfall through an unethical and unlawful

20  scheme premised upon falsehoods and misleading statements contained in the Report and

21  subsequent letters. The report and subsequent written assertions were willfully and intentionally

22  designed and intended to influence and manipulate the market, by wrongfully defaming and

23  disparaging Plaintiffs' reputations. Defendants undertook their carefully orchestrated scheme with

24  the express intent to interfere with efficient public markets by intentionally disseminating false

25  information in order to depress the value of Solutions 30 SE's stock and profit from such depression

26  in value by implementing a short-selling scheme, on which Defendants built their fortunes. The sole

27  purpose of this short-selling scheme was to enable Defendants to secure a quick and illegal financial

28  windfall. Defendants purportedly claim they also wanted to inform investors of risks associated

1  with investing in Solutions 30 SE or doing business with Plaintiffs, but this claim is belied by the

2  fact that Defendants made no efforts to verify the information they disseminated and purportedly

3  relied on the anonymous Report to procure a financial interest in the short-selling scheme.

4       28.     The motive for Defendants' approach is not only revealed by their past record of

5  unsuccessful litigation demonstrating a pattern, but also from their failure to conduct even the most

6  basic due diligence on the Report they eventually and unlawfully used. Defendants must be held

7  accountable so that such activity will not be incentivized and repeated in the future. Accordingly,

8  the purpose of this action is to hold the Defendants, and each of them, fully accountable for their

9  unlawful and inappropriate statements and scheme, including punitive and exemplary damages.

10  **COUNT 2**

11  **VIOLATION OF UNFAIR COMPETITION LAW**

12  **[by All Plaintiffs against All Defendants ]**

13       29.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 21, and 23

14  through 28 as if fully set forth.

15       30.     Defendants' republication of defamatory statements concerning Plaintiffs and

16  Defendants' short-selling scheme, as alleged above, constitute "unfair competition" under one or

17  more of the first three definitions set forth in California Business and Professions Code § 17200 (the

18  Unfair Competition Law, abbreviated "UCL"), in that they constitute business acts or practices that

19  are "unlawful, unfair or fraudulent," any one of which is by itself actionable.

20       31.     A business act or practice is "unlawful" under the UCL if it violates any other law

21  (whether by statute or at common law) or regulation. Defendants' actions constitute "unlawful"

22  business acts or practices because Defendants defamed Plaintiffs (with libel being a tort at common

23  law, codified at California Civil Code § 45).

24       32.     A business act or practice is "unfair" under the UCL if it offends an established

25  public policy or is immoral, unethical, oppressive, or unscrupulous. Defendants' actions constitute

26  "unfair" business acts or practices because Defendants lied about Plaintiff and made money by

27  shorting Plaintiff's stock after taking premeditated steps to depress its value, which offends

28  established public policy, and is immoral, unethical, oppressive, and unscrupulous.

33.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive the public. Defendants' actions constitute "fraudulent" business acts or practices by deceiving the public about Plaintiffs' business reputation.

34.     Plaintiffs have suffered economic injuries as a result of Defendants' acts of unfair competition, including, but not limited to: decrease in business, operating losses, diminution of reputation and credit rating, and increase in the rate of interest it must pay for loans.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1.     For damages according to proof;

2.     For disgorgement of profits made by Defendants;

3.     For exemplary and punitive damages;

4.     For costs of suit;

5.     For attorney fees to the extent permitted by law; and

6.     For such further legal and equitable relief this Court deems just and proper

Dated: April 2, 2021                    TOSOLINI, LAMURA, RASILE & TONIUTTI, LLP

By: /s/ *S. Martin Keleti*
S. Martin Keleti
Attorneys for plaintiffs Solutions 30 Eastern Europe, s.r.l., Swordfish Advisory Services s.r.l., and Federico Salmoiraghi

## PRAYER FOR RELIEF

Plaintiff demands a trial by jury of all issues so triable.

Dated: April 2, 2021                    TOSOLINI, LAMURA, RASILE & TONIUTTI, LLP

By: /s/ *S. Martin Keleti*
S. Martin Keleti
Attorneys for plaintiffs Solutions 30 Eastern Europe, s.r.l., Swordfish Advisory Services s.r.l., and Federico Salmoiraghi