Bruce E.H. Johnson (CA State Bar No. 159927)
Ambika Kumar Doran (*pro hac vice* application forthcoming)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Ave., Suite 3300
Seattle, Washington 98104
Telephone:   (206) 757-8069
Facsimile:   (206) 757-7069
Email: brucejohnson@dwt.com, ambikakumar@dwt.com

Abigail Zeitlin (CA State Bar No. 311711)
DAVIS WRIGHT TREMAINE LLP
865 S Figueroa Street, Suite 2400
Los Angeles, California 90017
Telephone:   (213) 633-8614
Facsimile:   (213) 633-6899
Email:        AbigailZeitlin@dwt.com

Attorneys for Muddy Waters Capital LLC and Carson C. Block

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOLUTIONS 30 EASTERN EUROPE, S.R.L., a Romanian limited liability company; SWORDFISH ADVISORY SERVICES S.R.L., a Romanian limited liability company; and FEDERICO SALMOIRAGHI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MUDDY WATERS CAPITAL LLC, a Delaware limited liability company, and CARSON C. BLOCK, an individual,<br><br>Defendant. | Case No. 3:21-cv-02423<br><br>**DEFENDANTS' ANSWER AND DEFENSES**<br><br>Date:<br>Time:<br>Department: |

Defendants Muddy Waters Capital LLC and Carson C. Block file this answer to the Complaint. To the extent Defendants do not specifically admit any allegations, they deny those allegations.

**INTRODUCTION AND OVERVIEW OF COMPLAINT AND ANSWER**

This case presents fundamental issues of First Amendment rights.  By filing the Complaint, the Plaintiffs seek to punish and prevent vital discussions about a matter of public concern, namely a publicly traded company and its connections to individuals with proven links to organized crime.

Muddy Waters primarily manages investment funds and employs an activism investment strategy that includes short selling problematic companies in conjunction with publishing investigative reports.  Muddy Waters' reporting focuses on companies that it suspects are committing fraud or other illegal activities, or are deceiving its investors in material ways.  Muddy Waters' research, which is provided free of charge, has helped regulators with numerous investigations of public companies, resulting in eight de-listings from national stock exchanges, recovery of tens of millions of dollars in fines from public companies, and more than $100 million in payments to investors.  Muddy Waters received the Financial Times' "Boldness in Business Award" in 2012; and in 2011, Bloomberg BusinessWeek named Muddy Waters' principal, defendant Carson Block, "One of the 50 Most Influential in Global Finance."

Given that Muddy Waters routinely publishes in-depth exposés of corporate misconduct, it is unsurprising that Muddy Waters (and its predecessor) have been sued five times.  No case has proceeded to trial, and Muddy Waters has not retracted any portion of any report.  Most recently, the California Court of Appeals dismissed a complaint brought by a plaintiff similarly situated to Plaintiffs under California's Anti-SLAPP statute.  The plaintiff's complaint in this action is yet another meritless action meant to harass and exact vengeance on Muddy Waters.

Muddy Waters had been short shares of S30 since May 2019.  After eighteen months, S30 published on its website two responses to an anonymous report.  Muddy Waters became aware of the anonymous report only through S30's responses and only received a copy of the report when Zone Bourse, a French financial news website, published the report.  Beginning December 11, 2020, Muddy Waters published the first of a series of an open, public letters via Twitter to Mr.

1

Gianbeppi Fortis, who is the CEO of S30. These letters addressed, among other things, S30's multiple and persistent connections to people who are connected to or otherwise associated with organized crime. The facts presented in Muddy Waters' letters were thoroughly researched and based on publicly available sources. Muddy Waters has always maintained that it is not the author of the report, nor did it have any prior notice of its publication.

Plaintiffs' lawsuit lacks merit. Neither Muddy Waters nor Carson Block authored the anonymous report. Further, the Defendants' actual statements are opinions based on truthful facts, address issues of significant public interest and concern, and most importantly, are protected and privileged by the First Amendment.

## JURISDICTION

1. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity between plaintiff and defendants, and the amount in controversy exceeds $75,000, exclusive of costs and attorney fees.

**ANSWER**: Defendants admit that Plaintiffs purport to seek more than $75,000 in damages, deny that such damages are proper, and therefore admit this Court has subject matter jurisdiction over the claims.

## VENUE

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), because all defendants reside in the same state, and at least one of the defendants resides in this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims asserted occurred in this district.

**ANSWER**: Defendants admit that venue is proper in this Court.

## PARTIES

3. Plaintiff Solutions 30 EE is a limited liability company organized and existing under the laws of Romania.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 and therefore deny the allegations. Upon information and belief, however, Solutions 30 EE's name has been changed to Salmo Services EE.

4. Plaintiff Swordfish Advisory Services s.r.l. ("Swordfish") is a limited liability company organized and existing under the laws of Romania. Swordfish owns (is a member of) Solutions EE.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 and therefore deny the allegations.

5. Plaintiff Federico Salmoiraghi ("Salmoiraghi") is an individual, a citizen of Italy. Salmoiraghi is the beneficial owner of Salmo Services Group ("Salmo") that owns Swordfish and respectively SOLUTIONS 30 EE.

**ANSWER**: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore deny the allegations.

6. Defendant Muddy Waters Capital LLC ("Muddy Waters") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in the State of California.

**ANSWER**: Defendants admit the allegations in paragraph 6.

7. Defendant Carson C. Block ("Block") is the founder, research director, and sole member and member-manager of Muddy Waters. Block resides in California. Plaintiff will refer to Muddy Waters and Block collectively as "Defendants."

**ANSWER**: Defendants admit the allegations in paragraph 7.

8. Each of the Defendants was the agent, employee, alter ego, or co-conspirator of each of the other Defendants, and was at all times acting within the purpose and scope of said agency, employment, and conspiracy, and each of the Defendants has ratified and approved the acts of the remaining Defendants.

1    **ANSWER**:  Paragraph 8 calls for a legal conclusion and thus does not require a response.

2    Insofar as a response is required, Defendants deny the allegations.

**ALLEGATIONS COMMON TO ALL COUNTS**

4    9. Solutions 30 EE is an international company committed to provide help desk

5    services to private companies worldwide. Under the supervision of Salmoiraghi, Solutions 30 EE

6    has been operating successfully. Solutions 30 SE, a company publicly-traded on the Euronext

7    Paris exchange, outsources some of its back-office activities, in Italy and in Eastern Europe, to

8    Solutions EE.

9    **ANSWER**:  Defendants lack knowledge or information sufficient to form a belief as to

10   the truth of the allegations in paragraph 9 and therefore deny the allegations.

12   10. On November 16, 2020, Gianbeppi Fortis, Chairman of Solutions SE, forwarded

13   to Salmoiraghi an anonymous report (the "Report") which Mr. Fortis had received. The Report

14   concerned Solutions 30 SE. Although the Report is anonymous, Plaintiffs are informed and

15   believe that Defendants wrote and sent the Report to Solutions SE.

16   **ANSWER**:  Defendants deny the allegations in the third sentence of paragraph 10 and

17   specifically deny that they wrote the Report, a true and correct copy of which is attached as

18   Exhibit A.  Defendants lack knowledge or information sufficient to form a belief as to the truth

19   of the remaining allegations in paragraph 10, and therefore deny the allegations.

21   11. Among other things, the Report falsely and baselessly accused Solutions SE and

22   its related companies (a) were connected to and facilitating activities of money laundering; and

23   (b) employing former and current criminals as representatives. The first paragraph of the Report

24   reads:

> This report contains detailed analysis of the public accounts and
> filings of Solutions 30, a service company quoted on the French
> stock market. The findings presented in this document show that
> (1) Solutions 30 has multiple links to persons with criminal
> convictions related to money laundering, (2) Solutions 30 has been
> party to numerous transactions consistent with money laundering,
> (3) Solution [sic] 30 and related subsidiary accounts contain

4

DAVIS WRIGHT TREMAINE LLP

> numerous mistakes and are impossible to reconcile, (4) Solutions 30's profitability and cash flow do not match the purported nature of the business. [footnotes omitted]

**ANSWER**: Defendants answer that the report speaks for itself and denies that Plaintiffs have adequately or accurately characterized the report. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 11 and therefore deny the allegations.

12. On or about December 8, 2020, Bloomberg published the Report. On social media (Twitter), Defendants denied being the source of the Report, yet republished the substance of the Report and endorsed it for Defendants' readership of more than 180,000 followers. The extreme and irresponsible language from the Report, and the commentary about it, echoed through the blogosphere, just as Defendants planned.

**ANSWER**: Defendants deny the allegations in the second and third sentences of paragraph 12. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 12 and therefore deny the allegations.

13. As early as on or about December 11, 2020, Defendants admitted having been short on Solutions 30 SE since approximately May, 2019. The short-sale scheme that emerged publicly on or about the beginning of December, 2020, thus apparently began at least seven months earlier when, by Defendants' own admission, it was short on the stocks, from which it sought to profit by engaging in an aggressive and baseless defamation campaign. Essentially, Defendants engage in a form of extortion or "shakedown" by way of publishing false information to manipulate and confuse the market. Given that Defendants were short on Plaintiff's stock, it was no secret that Defendants would share profits if shares of Solution 30 SE's stock sank. Defendants intentionally organized the negative publicity campaign in an effort to profit from losses by Solutions SE, because Defendants would directly profit from any negative information.

**ANSWER**:  Defendants admit the allegations in the first sentence of paragraph 13. Defendants deny the remaining allegations paragraph 13.

14.     On or about January 25, 2021, Defendants sent a letter to Mr. Fortis, not only questioning Solutions 30 SE, but defaming Salmoiraghi personally, and by implication companies affiliated with him. The January 25, 2021 letter stated in pertinent part:

> We remain short S30, and in our view, the Anonymous Report's allegations of fraud and money laundering are likely at least directionally correct…..
> . . . .
> . . . (Mr. Salmoiraghi has a long history of dealings with S30, such as, BSS was once owned, in part, by RZA Connect S.R.L., which is current owned by Mr. Salmoiraghi through various intermediate entities)

**ANSWER**:  Defendants admit that Muddy Waters sent a letter to Gianbeppi Fortis on or about January 25, 2021.  Defendants state that the letter, a true and correct copy of which is attached as Exhibit B, speaks for itself and deny that Plaintiffs have adequately or accurately described it.  Defendants otherwise deny the allegations in paragraph 14.

15.     On or about January 27, 2021, Defendants published an open letter, also impugning Salmoiraghi's character. The January 27, 2021 letter stated, in pertinent part, on page 2:

> According to Romanian court records that we just came across, in August 2020, Federico Salmoiraghi, Remote 30 Eastern Europe, and three affiliated companies (the "Plaintiffs") had their bank accounts closed by Bank Transylvania, which is the third-largest bank in Romania (the "Bank"). The reason for the closures appears to be suspicion of money laundering. The Bank has a legal obligation to prevent money laundering. After noting transactions that were suspicious, including amounts paid to Porsche Inter Audio Romania Srl, (who doesn't love a Porsche?), it requested the Plaintiffs provide satisfactory documentation explaining the transactions within five days. The Plaintiffs failed to satisfy the Bank's concerns, and the Bank closed the accounts. The Plaintiffs sued the Bank in October 2020, but the Romanian court dismissed the lawsuit and found in favor of the Bank.

Swordfish was one of the companies, which are listed later in the letter:

1
2
3

> The four corporate Plaintiffs were: RZA Connect, Remote 30 Eastern Europe, Swordfish Advisory Services, and Winning Clean Services Srl. RZA Connect, Remote 30 Eastern Europe, and Swordfish Advisory Services are connected to both S30 and Mr. Salmoiraghi, who himself is a named Plaintiff.

4  Page 3 of the letter is studded with references to Salmoiraghi, Solutions 30 EE, and Swordfish.

5  **ANSWER**: Defendants admit that Muddy Waters published an open letter on January

6  27, 2021. Defendants state that the letter, a true and correct copy of which is attached as Exhibit

7  C, speaks for itself and deny that Plaintiffs have adequately or accurately described it.

8  Defendants otherwise deny the allegations in paragraph 15.

9

10  16.     An examination of the documents to which the letter alludes confirms that not

11  only did Bank Transylvania (in Romanian, "Banca Transilvania") not have any suspicion of

12  money laundering on the part of Plaintiffs (including Salmoiraghi), but that the bank merely was

13  enforcing newly-enacted reformed regulations, which require every owner of an account in

14  Romania to be to furnish certain information. In addition, Salmoiraghi prevailed in a lawsuit (the

15  decision can be found at:

16  http://portal.just.ro/301/SitePages/Dosar.aspx?id_dosar=30100000000651667&id_inst=301) that

17  he brought on behalf of another of his companies, RZA Connect s.r.l., further confirmed by the

18  immediate reopening of the accounts involved.

19  **ANSWER**:  Defendants deny the allegations in the first sentence of paragraph 16.

20  Defendants lack knowledge or information sufficient to form a belief as to the truth of the

21  remaining allegations in paragraph 16, and therefore deny the allegations.

22

23  17.     The Report and the January 27, 2021 letter are merely examples of the modus

24  operandi Defendants employ. Under the guise of being a protector of ethics in the industries

25  Defendants try to manipulate, Defendants feign concern about potential misconduct, but only by

26  the companies whose shares Defendants are shorting. Defendants begin by creating confusion

27  and fear in investors by way of unverified and often defamatory reports, which they then publish

28  on its their social media platforms and thereby unlawfully create the basis for a successful

DAVIS WRIGHT TREMAINE LLP

1 shorting strategy. In fact, by mid-December, Defendants' efforts started paying dividends

2 considering that Solutions 30 SE had already lost half of its market capitalization, and causing

3 Solutions 30 SE and its subsidiaries tremendous and unjustified loss.

4 **ANSWER**: Defendants deny the allegations in paragraph 17. Defendants are a

5 renowned financial analyst and activist short-seller, whose research has led regulators to de-list

6 from stock exchanges and indefinitely suspend eight companies, including three from the U.S.

7 Stock Exchange.

9   18.   Defendants have engaged in almost identical and unethical activities in the past,

10 and unless made accountable for their behavior, Defendants will only continue such activities.

11 For example, Defendants have engaged in almost identical and unlawful activity with regard to

12 St. Jude Medical, Inc. ("St. Jude"), with only minor deviations. As in the present case,

13 Defendants were short on St. Jude's stock as well. Defendants similarly then tried to instill fear

14 and confusion in the market by way of misleading and unsubstantiated reports, to unlawfully

15 facilitate the shorting strategy. The only difference is that in this case, it appears that Defendants

16 based their claims on an anonymous Report, which Plaintiffs allege was directly or indirectly

17 commissioned by Defendants or one of their subsidiaries, rather than a report made by

18 Defendants themselves admitted in the case involving St. Jude.

19 **ANSWER**: Defendants deny the allegations in paragraph 18.

21   19.   Defendants' defamatory statements regarding Salmoiraghi defame him and his

22 companies by implying that employed individuals in connection with the Italian "mafia" in order

23 to facilitate a money laundering scheme. Defendants' statements in these areas are outrightly

24 false or create a false implication that Plaintiffs are unethical and, more importantly, that the

25 companies (both Swordfish and Solutions 30 EE, as well as nonparty Solutions 30 SE) are unsafe

26 investments.

27 **ANSWER**: Defendants deny the allegations in paragraph 19.

8

20. While Defendants sometimes attempt to remain vague and in engage in insinuation and speculation, in order to limit their exposure to defamation, their tactics are at times more direct, but even when not, they are transparent.

**ANSWER**: Defendants deny the allegations in paragraph 20.

21. Plaintiffs fully expect Defendants to continue their scheme by making further false and misleading statements in hopes of adversely affecting Solutions 30 SE's stock price for Defendants' gain in disregard for the integrity of the market and its actors, as well as the collateral damage on Plaintiffs, who do business with Solutions 30 SE, either directly or indirectly. Defendants' feigned concerns are nothing but a way to divert attention from their scheme to profit unfairly at the expense of Plaintiffs and others.

**ANSWER**: Defendants deny the allegations in paragraph 21.

## COUNT 1

## DEFAMATION

## [BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS]

22. Plaintiffs reallege and incorporate by reference paragraphs 1 through 21 as if fully set forth.

**ANSWER**: Defendants incorporate all prior paragraphs of this Answer.

23. As set forth above, Defendants have, through their statements about the alleged unlawful activities by Salmoiraghi and his companies, publicly stated or implied that Plaintiffs have criminal associations, and that Plaintiffs have routinely employed former criminals in order to facilitate a money laundering scheme.

**ANSWER**: Defendants deny the allegations in paragraph 23.

24. As set forth in detail above, these implied statements of fact are demonstrably false and misleading. Defendants have made these statements and implications by the selection and juxtaposition of true statements so as to imply a defamatory connection between them, as

well as by omitting facts that would have dispelled the defamatory implication and revealed the truth.

**ANSWER**: Defendants deny the allegations in paragraph 24.

25. Defendants made these statements either knowing that they were false, or in reckless disregard of their truth or falsity, in order that each of them could profit from Defendants' admitted short positions in Solutions 30 SE's stock. Defendants intended to make these defamatory implications and to cause the expected and intended repetition of them on a wide scale in order that Defendants would profit from their admitted short positions in Solutions 30 SE's stock, and did so either knowing that they were false, or in reckless disregard of their truth or falsity. Through Defendants' malice toward Solutions 30 SE, Defendants have acted without regard to the rights of others affected by Defendants' defamatory statements or the effect Defendants' actions would have on Plaintiffs.

**ANSWER**: Defendants deny the allegations in paragraph 25.

26. These implied statements of fact have harmed and will harm or threaten to harm Plaintiffs in their business. The allegations of dishonesty and of violating money laundering laws are defamatory per se. Because Defendants' false and misleading statements are defamatory per se, damages are presumed, for Salmoiraghi, an individual, for the damage is to his personal reputation. For Solutions 30 EE and Swordfish, their prestige and standing in the business world has been harmed; they depend on their good name in order to attract customers and to achieve the purposes for which they were created, so any false publications which would tend to drive away customers or taint their name cause damages. Plaintiffs have been (and likely be further) substantially injured as a result of these false statements including, among other things, loss of goodwill. Plaintiffs have lost business, including Solution 30 EE's rescission of a contract, costing it a loss of business in excess of $150,000 per month. The baseless allegations threaten to have the business community, and in particular, financial institutions, shun Plaintiffs, and cause Plaintiffs to lose access to banking services. This harm and risk of future harm is ongoing.

**ANSWER**: Defendants deny the allegations in paragraph 26.

27.    This action arises from Defendants' intentional, willful and malicious scheme to manipulate the securities markets for their own financial windfall through an unethical and unlawful scheme premised upon falsehoods and misleading statements contained in the Report and subsequent letters. The report and subsequent written assertions were willfully and intentionally designed and intended to influence and manipulate the market, by wrongfully defaming and disparaging Plaintiffs' reputations. Defendants undertook their carefully orchestrated scheme with the express intent to interfere with efficient public markets by intentionally disseminating false information in order to depress the value of Solutions 30 SE's stock and profit from such depression in value by implementing a short-selling scheme, on which Defendants built their fortunes. The sole purpose of this short-selling scheme was to enable Defendants to secure a quick and illegal financial windfall. Defendants purportedly claim they also wanted to inform investors of risks associated with investing in Solutions 30 SE or doing business with Plaintiffs, but this claim is belied by the fact that Defendants made no efforts to verify the information they disseminated and purportedly relied on the anonymous Report to procure a financial interest in the short-selling scheme.

**ANSWER**:  Defendants deny the allegations in paragraph 27.

28.    The motive for Defendants' approach is not only revealed by their past record of unsuccessful litigation demonstrating a pattern, but also from their failure to conduct even the most basic due diligence on the Report they eventually and unlawfully used. Defendants must be held accountable so that such activity will not be incentivized and repeated in the future. Accordingly, the purpose of this action is to hold the Defendants, and each of them, fully accountable for their unlawful and inappropriate statements and scheme, including punitive and exemplary damages.

**ANSWER**:  Defendants deny the allegations in paragraph 28.

# COUNT 2

## VIOLATION OF UNFAIR COMPETITION LAW

### [BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS]

29. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 21, and 23 through 28 as if fully set forth.

**ANSWER**: Defendants incorporate all prior paragraphs of this Answer.

30. Defendants' republication of defamatory statements concerning Plaintiffs and Defendants' short-selling scheme, as alleged above, constitute "unfair competition" under one or more of the first three definitions set forth in California Business and Professions Code § 17200 (the Unfair Competition Law, abbreviated "UCL"), in that they constitute business acts or practices that are "unlawful, unfair or fraudulent," any one of which is by itself actionable.

**ANSWER**: Defendants deny the allegations of paragraph 30.

31. A business act or practice is "unlawful" under the UCL if it violates any other law (whether by statute or at common law) or regulation. Defendants' actions constitute "unlawful" business acts or practices because Defendants defamed Plaintiffs (with libel being a tort at common law, codified at California Civil Code § 45).

**ANSWER**: Defendants respond that the first sentence of paragraph 31 calls for a legal conclusion to which no response is required.  Insofar as a response is required, Defendants deny the allegations.  Defendants deny the remaining allegations in paragraph 31.

32. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, or unscrupulous. Defendants' actions constitute "unfair" business acts or practices because Defendants lied about Plaintiff and made money by shorting Plaintiff's stock after taking premeditated steps to depress its value, which offends established public policy, and is immoral, unethical, oppressive, and unscrupulous.

**ANSWER**: Defendants respond that the first sentence of paragraph 32 calls for a legal conclusion to which no response is required. Insofar as a response is required, Defendants deny the allegations. Defendants deny the remaining allegations in this paragraph.

33. A business act or practice is "fraudulent" under the UCL if it is likely to deceive the public. Defendants' actions constitute "fraudulent" business acts or practices by deceiving the public about Plaintiffs' business reputation.

**ANSWER**: Defendants respond that the first sentence of paragraph 33 calls for a legal conclusion to which no response is required. Insofar as a response is required, Defendants deny the allegations. Defendants deny the remaining allegations in paragraph 33.

34. Plaintiffs have suffered economic injuries as a result of Defendants' acts of unfair competition, including, but not limited to: decrease in business, operating losses, diminution of reputation and credit rating, and increase in the rate of interest it must pay for loans.

**ANSWER**: Defendants deny the allegations in paragraph 34.

## AFFIRMATIVE AND OTHER DEFENSES

Below are Defendants' defenses. By setting forth these affirmative defenses, Defendants do not assume any burden of proof as to any fact issue or other element of any cause of action that properly belongs to Plaintiffs. Defendants reserve the right to amend or supplement their affirmative defenses.

1. Plaintiffs have failed to state a claim on which relief can be granted.

2. Plaintiffs' claims are barred, in whole or in part, because Defendants' alleged actions were privileged under California law and common law

3. Plaintiffs' claims are barred, in whole or in part, because some or all of the allegedly defamatory statements are not actionable because they are part of a fair and true report that is absolutely privileged under California Civil Code Section 47(d).

DAVIS WRIGHT TREMAINE LLP

4. Plaintiffs' claims fail because any injury or damages they allegedly suffered, were proximately or directly caused, in whole or in part, by the actions of others over whom Defendants had no control, including Plaintiffs themselves.

5. Plaintiffs' claims are barred, in whole or in part, by the incremental harm doctrine.

DATED: May 7, 2021

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: *s/ Abigail Zeitlin*
    Abigail Zeitlin

Attorneys for Muddy Waters Capital LLC and Carson C. Block