UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SOLUTIONS 30 EASTERN EUROPE, S.R.L.**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**MUDDY WATERS CAPITAL LLC**, *et al.*,<br><br>Defendants. | Case No. 4:21-cv-02423-YGR<br><br>**ORDER AWARDING ATTORNEYS' FEES**<br><br>Re: Dkt. No. 42 |

Plaintiffs sued the defendants in the case for defamation and violation of California's Unfair Competition Law. (Dkt. No. 1.) On January 12, 2022, this Court granted the defendants' motion to dismiss and strike the complaint pursuant to California's anti-SLAPP statute after hearing argument on the underlying motion. (Dkt. No. 40.) The Court also granted the defendants' motion for a bond after finding that reducing the bond to $100,000 was appropriate under the circumstances of the case. (*Id.*) After the plaintiffs failed to timely amend, the Court dismissed the case with prejudice. (Dkt. No. 41.) The bond was never posted. Defendants now move to recover attorneys' fees and costs pursuant to California's anti-SLAPP motion. (Dkt. No. 42.)[1] Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the motion is **GRANTED IN PART**: the Court **AWARDS** defendants $111,339.62 in attorneys' fees and $13,288.08 in costs.

**I. LEGAL STANDARD**

The parties do not dispute the standard to be used in evaluating the motion, only its application. A defendant who prevails on an anti-SLAPP motion has a right to recover reasonable

---

[1] The Court assumes the parties' familiarity with its rulings and the background of this case.

attorneys' fees and costs. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001); Cal. Civ. Proc. Code § 425.16(c). California's anti-SLAPP attorneys' fee provision applies in federal court. *Verizon Delaware v. Covad Comms.*, 377 F.3d 1081, 1091 (9th Cir. 2004); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003). Ultimately, the fee provision "is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting [itself] from a baseless lawsuit." *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2013) (quotation omitted).

The analysis of whether an attorneys' fee award is reasonable begins with the lodestar, which the Court calculates by multiplying the number of hours reasonably spent by counsel by a reasonable hourly rate. *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 985 (2010). "[T]he lodestar is the basic fee for comparable legal services in the community." *Ketchum*, 24 Cal. 4th at 1132. "The reasonable hourly rate is that prevailing in the community for similar work." *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). Neither party disputes that the burden is on the defendants to establish the reasonableness of the fees sought. *See City of Colton v. Singletary*, 206 Cal. App. 4th 751, 784 (2012). "To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." *Ketchum*, 24 Cal. 4th at 1138.

## II. DISCUSSION

In the moving papers, the defendants requested $115,202.50 in attorneys' fees for 207.10 hours of attorney and paralegal time as well as $13,288.08 in costs. After completing the briefing associated with this fees motion, defendants requested an additional $30,257.50 for 49.20 hours of attorney and paralegal for time spent on the fees motion.[2] This brings the total request to $158,748.08 ($145,460 in fees and $13,288.08 in costs). Plaintiffs filed a short opposition that consisted of 3.5 pages of text. This opposition did not submit any new evidence and hardly addressed the specifics of the time entries provided by the defendants. Considering the record, the

---

[2] Since the plaintiffs did not have an opportunity to respond to the submission concerning the fees for preparing the fees motion, the Court permitted the plaintiffs to file a surreply by April 26, 2022. No surreply was filed.

Court finds that most of the request is reasonable and makes limited deductions based upon the circumstances of this case.[3]

**A. HOURLY RATES**

Plaintiffs did not challenge the reasonableness of the hourly rates at issue. In any event, defendants have demonstrated that the rates sought for attorney work are reasonable. For reasons articulated below, the Court cannot determine that the paralegal rates are reasonable based upon the record as presented.

There is no dispute that the Court must determine a reasonable hourly rate based on the "experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). Here, defendants request attorneys' fees calculated with the following hourly rates:

| Attorney | Years of Practice | Requested 2021 Rate | Requested 2022 Rate |
|---|---|---|---|
| Bruce Johnson (Partner) | 40+ | $905 | $980 |
| Ambika Kumar (Partner) | 15+ | $725 | $785 |
| MaryAnn Almeida (Associate) | 7 | $535 | $625 |
| Abigail Zeitlin (Associate) | 6 | $460 | $570 |
| Crystal Moore (Paralegal) | 14+ | $350 | $375 |
| Marni Shapiro (Paralegal) | Unknown | N/A | $450 |

Defendants submit the Declaration of Bruce Johnson, who is a partner with Dwight Wright

---

[3] Since there were few outstanding disputes based upon the papers, the Court ordered the parties to meet and confer over the motion. The meet and confer did not narrow any issues since plaintiffs' counsel was unable to reach the plaintiffs in the period of time allocated by the Court.

Additionally, the Court asked the parties for their positions on whether this fees motion should be stayed pending the plaintiffs' appeal. Plaintiffs suggest that the case should be stayed since appealing the order granting the anti-SLAPP motion automatically stays further proceedings and a decision may be a waste of time if the order is reversed. This does not persuade. In the Ninth Circuit, an appeal from a ruling on the merits does not foreclose an award of attorneys' fees. *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956-57 (9th Cir. 1983). Furthermore, a ruling now promotes judicial economy by permitting the fee award to be consolidated with the appeal on the merits. *See, e.g.*, *Smith v. Payne*, No. C 12-01732-DMR, 2013 WL 1615850, at *2 (N.D. Cal. April 15, 2013). Seeing no other basis to justify a stay, the plaintiffs' request in not well taken and is denied.

3

Tremaine LLP ("DWT") (Dkt. No. 42-1), as well as the Declaration of Brian Fanning, DWT's Director of Client Services and Pricing (Dkt. No. 42-3). These declarations contextualize the attorneys' rates by referencing their experience and rates charged at comparable firms in the San Francisco Bay Area legal market, even though the attorneys are primarily based out of DWT's office in Seattle, Washington. Based upon the information submitted, the rates sought by defendants are at or below the median ranges for lawyers of comparable experience in the Bay Area. The Court is also satisfied based upon its own experience with fee applications that the attorney rates are reasonable. Therefore, the rates for DWT's attorneys Bruce Johnson, Ambika Kumar, MaryAnn Almeida, and Abigail Zeitlin are accepted.

However, based upon the record presented, the Court cannot determine that the paralegal rates are reasonable. While defendants submit that Crystal Moore has over fourteen years of experience, their records concerning her rates are inconsistent. For instance, the Declaration of Brian Fanning and Declaration of Bruce Johnson places her 2021 rate at $350 and her 2022 rate at $375. The motion for attorneys' fees places her 2021 rate at $270 and her 2022 rate at $375. Setting aside the inconsistency in the rate actually charged, the declarations do not provide context for the paralegal rate in the prevailing market. Even more deficiencies exist with respect to the fees sought in defendants' reply for paralegal Marni Shapiro. Defendants submit nothing about the experience or credentials of Marni Shapiro to support the application of a $450 rate. Since defendants have not carried their burden with respect to these paralegal rates, the Court reduces the fees award by $4,487.50 attributed to Crystal Moore in the billing statements and by an additional $1,800 for the amount sought on behalf of Marni Shapiro in reply for the paralegal's assistance with cite-checking and filing.

### B. TOTAL HOURS BILLED

Next, the Court must consider the reasonableness of the total hours billed. In the moving papers, the defendants seek to recover for 207.10 hours of attorneys' and paralegals' time. This breaks down to approximately 10.9 hours strategizing a response to the plaintiffs' claims, 147 hours researching, drafting, and strategizing the defendants' anti-SLAPP motion, 40.1 hours researching, drafting, and strategizing a reply to the plaintiffs' opposition, 8.3 hours preparing for

and participating in oral argument on the anti-SLAPP motion, and 0.8 hours preparing the fees motion. In reply, defendants supplemented their request and sought fees for an additional 49.20 hours preparing the fees motion. As a whole, the request totals $158,748.08 in fees.

Generally, the applicant must justify the reasonableness of the time submitted by providing detailed time records. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (recognizing that the applicant "is not required to record in great detail how each minute of his time was expended," but should "identify the general subject matter of his time expenditures"). Defendants do that here. Furthermore, the applicant must exercise sound "billing judgment" concerning the number of reasonable hours worked and must eliminate excessive, redundant, unproductive, or unnecessary hours. *Id.* This presents a closer question.

Here, plaintiffs concede that "there do[es] not appear to be flagrant examples of billing abuses, such as block billing, highly coincidental repetition of the same amounts of time for various tasks, or unusually long work days." (Dkt. No. 45 at 4.) Instead, plaintiffs primarily object to the reasonableness of the "whopping" amount of time spent researching and drafting the motion. (Dkt. No. 45 at 3.) Per the plaintiffs, the defense counsel should have been more efficient given their credentials and extensive experience. While plaintiffs' short opposition does not address the particularities of the billing at depth (or provide competing evidence in opposition), they do point to inconsistencies such as spending 6.30 hours in two days to draft a fact section of the anti-SLAPP motion. Plaintiffs also argue that the amount the defendants seek is especially unreasonable given that the Court previously set the bond at $100,000 based upon the circumstances of the case.

Defendants counter that the plaintiffs fail to account for the complexity of the case in vindicating First Amendment rights. For instance, plaintiffs criticize the time spent developing a five-page fact section that was based upon nine documents. However, several of those documents were lengthy and some involved translating and understanding foreign court documents. Defendants also submit that they were efficient in preparing the anti-SLAPP motion: it was leanly staffed, associates primarily focused on the research and drafting, and partners primarily supervised and developed overall case strategy.

Having closely analyzed the records, the Court cannot adopt the defendants' characterization. The case may be leanly staffed to the extent it includes four attorneys instead of more.[4] However, the case is staffed with senior attorneys *and* senior paralegals. It does not appear that any junior attorneys were solicited to assist with preliminary research and drafting. While the defendants submit that the associates did the bulk of the work, the submission from the defendants illustrates that one partner, Ambika Kumar, billed more than the senior associate MaryAnn Almeida in connection with the anti-SLAPP motion. Defendants also quibble with the fact that plaintiffs only focused on two billing entries in connection with the development of the fact section of their motion. However, a close review of those records demonstrates that approximately 26.5 hours were spent drafting, revising, strategizing, and reviewing case files in connection with the fact section as of April 20, 2021. This is in addition to the approximately 22.8 hours spent strategizing, investigating, and outlining before a deeper dive into the drafting itself since the lawsuit commenced.

Furthermore, context is relevant. In addition to the anti-SLAPP motion, defendants filed a motion for a bond. That motion included an extensive factual record concerning Romanian court proceedings and international business affairs.[5] Defendants argue that they are not seeking recovery for fees in connection with their motion for a bond. Nevertheless, how defendants sought to exclude fees in connection with their request for a bond is not apparent and is suspect where entries do include the fees they sought to exclude. For instance, block billing from Ambika Kumar on July 30, 2021, demonstrates that she is seeking recovery for work to "Revise motion for bond[.]" Other entries pertain to the motion for bond: July 29, 2021 ("Detailed revisions to

---

[4] The record suggests that defendants also engaged DLA Piper and Romanian counsel. It is unclear to the Court whether these were the same engagement and why additional counsel was necessary to process two translated copies of Romanian court documents attached to the anti-SLAPP motion. (*See* Dkt. Nos. 18-7, 18-8.) The defendants had already located, interpreted, and summarized the documents as demonstrated by the allegations in the complaint and the documents incorporated therein.

[5] The motion for bond included 54 exhibits compared to the nine attached to the anti-SLAPP motion. (*Compare* Dkt. No. 18 *with* Dkt. Nos. 21-22.) Overwhelmingly, the nine documents attached to the complaint included the communications and statements that were the basis of the defamation claim.

motions"); January 5, 2022 ("Review filings on SLAPP and bond motions"). Some fee entries expressly refer to the "motion to strike and dismiss" or the "SLAPP motion," while others are general as to "Draft facts section." The vague entries make it difficult for the Court to discern the basis for the fee sought.

Ultimately, given these issues, and in light of the circumstances of this case, the Court finds that a 25% fee reduction for the hours sought in the moving papers would be appropriate. "[W]hen faced with a massive fee application, the district court has the authority to make across-the-board percentage cuts either in the numbers of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (internal quotes omitted). It is well established that "'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Ketchum*, 24 Cal.4th at 1132. Courts also ground reductions in the experience of counsel and expect quality representation to inherently include efficient billing. *See, e.g.*, *Wynn v. Chanos*, No. 14-cv-04329-WHO, 2015 WL 3832561, at *5-6 (N.D. Cal. June 19, 2015) (recognizing that "given the sophistication of counsel and their substantial billing rates, this case should have been litigated much more efficiently without sacrificing quality" and noting that the "unreasonable staffing of five skilled attorneys at high rates," the "relative simplicity of this case," and "the duplication of efforts on preparing the motion to dismiss and the motion to strike"); *Maughan v. Google Tech., Inc.*, 143 Cal. App. 4th 1242, 1251 (2006) (holding that fee request for 200 hours of work was excessive where counsel had experience with anti-SLAPP matters). All of these support the reduction here.

Defendants conceded that counsel has extensive background litigating anti-SLAPP matters, including keeping appraised on recent developments. Indeed, the defendants in the case have previously prevailed in an anti-SLAPP matter before the California Court of Appeal, demonstrating familiarity with the legal framework relevant to their claim. This decision from the California Court of Appeal substantially narrowed the issues in this case. Furthermore, the defamation claim and its derivative UCL claim was not substantially difficult to brief. As discussed on the record at the hearing, many of the statements at issue did not concern the named plaintiffs, which substantially narrowed the analysis based upon the allegations of the complaint.

Indeed, the ruling was driven by documents expressly replied upon in the Complaint.[6] It is well established that courts do not resolve factual disputes in connection with an anti-SLAPP motion on the pleadings without permitting discovery.

Additionally, the Court is aware that "[d]efining what is reasonable by reference to other cases would violate the principle that 'each fee application under [the anti-SLAPP statute] must be assessed on its own merits . . . taking into account what is reasonable under the circumstances." *Graham-Sult*, 756 F.3d at 752 (citation omitted). Nevertheless, authority offered by the defendants further demonstrates that the amount they seek for an anti-SLAPP motion at the pleadings stages of *this* litigation is excessive. *See, e.g.*, *Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Ass'n*, 163 Cal. App. 4th 550, 560-63 (2008) (affirming fee awards totaling more than $275,000 in connection with a SLAPP motion where less than $100,000 pertained to trial court proceedings as opposed to the appeal after 345 hours); *Clifford v. Trump*, No. CV 18-06893-SJO (FFMx), 2018 WL 6519029, *4-5 (C.D. Cal. Dec. 11, 2018) (awarding $292,052.33 in connection with case strategy, a motion to transfer, a motion to strike, and the fee application after discounting the motion by 25% since it was excessive and duplicative to spend 580.75 hours across all issues); *Open Source Sec., Inc. v. Perens*, No. 17-cv-04002-LB, 2018 WL 2762637, *4-7 (N.D. Cal. June 9, 2018) (awarding $293,053.23 in fees and costs after briefing on two SLAPP motions, a motion for partial summary judgment, a combined hearing, after making substantial reductions for efficiency given counsels' experience with SLAPP motions); *Graham-Sult*, 756 F.3d at 751-53 (9th Cir. 2014) (affirming fee award for $240,506 in connection with early anti-SLAPP motion with a dozen causes of action). That the fees are excessive is also consistent with this Court's experience applied to the factual circumstances of this case. While the order setting the bond did not preclude the defendants from seeking additional fees, it did balance the reasonableness of the bond based upon the then-existing circumstances. Since then, this case

---

[6] At the hearing, the Court indicated that it appeared from the argument that the Romanian proceedings had concluded and the Court rejected the defendants' argument that their activities were privileged. Counsel clarified that those proceedings were ongoing and offered to supplement the record. The Court declined the invitation since the case could be disposed of based upon the allegations.

has been dismissed with prejudice and additional fees have only been incurred litigating the fees motion.

Finally, the defendants request $30,257.50 for litigating the pending fees motion. This Court is typically reluctant to award extensive fees on a fees motion. However, the law is clear that the fee award in connection with an anti-SLAPP motion "should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." *Ketchum*, 24 Cal. 4th at 1133, 1141 (citing *Serrano* v. *Unruh*, 32 Cal.3d 621, 624, 639 (1982)). Ultimately, the legal landscape is settled, the legal analysis for this motion is not complex, and the defendants appropriately submitted a summary of their billing records. A review of the records shows that the hours expended are reasonable subject to two discounts. First, there appears to be duplicative and inconsistent entries by Abigail Zeitlin on February 9, 2022 and February 17, 2022. Accordingly, the Court reduces this amount by $1,026. Second, the Court already determined that the paralegal rate has not been sufficiently established. Thus, the Court discounts the $1,800 sought for work completed by Marni Shapiro.

### C. Costs

In addition to fees, defendants also seek $13,288.08 in costs. This includes $317.00 as a pro hac vice filing fee, $7,590 for translation services, and $5,381.08 for unspecified services from DLA Piper. Plaintiffs did not object to the costs asserted. Based upon the record presented, and absent any objection from plaintiffs, the Court finds the defendants' request for costs reasonable.

### D. Summary

Having reviewed the detailed records, and after reducing defendants' request for unsupported and/or excessive fees, the Court concludes that the following request (as totaled below) is within reason for counsels' work and costs:

//
//
//
//
//

| Item | Amount Sought | Deductions | Total |
|---|---|---|---|
| Moving Motion Fees | $115,202.50 | ($3,325.00)[7] ($27,969.38)[8] | $83,908.12 |
| Fees for Attorneys' Fee Motion | $30,257.50 | ($1,800.00)[9] ($1,026)[10] | $27,431.50 |
| Costs | $13,288.08 | N/A | $13,288.08 |
| *Totals* | $158,748.08 | ($34,120.38) | $124,627.70 |

### III. CONCLUSION

In light of the foregoing, the defendants' motion for attorneys' fees and costs is **GRANTED IN PART**. The Court **HEREBY ORDERS** that defendants are awarded $111,339.62 in attorneys' fees and $13,288.08 in costs for a total of $124,627.70.

This order terminates Docket Number 42.

**IT IS SO ORDERED.**

Dated: April 28, 2022

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

---

[7] Paralegal expense.

[8] 25% reduction off of the remaining fees once paralegal time is discounted.

[9] Paralegal expense.

[10] Duplicate entries.

10